# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS,
LOCAL 1547, AFL-CIO,

        Plaintiff,

      v.

ALASKA COMMUNICATIONS
SYSTEMS HOLDINGS, INC.,

        Defendant.

Case No. 3:19-cv-00160-SLG

## ORDER RE MOTIONS FOR SUMMARY JUDGMENT

Before the Court at Docket 11 is Plaintiff International Brotherhood of Electrical Workers, Local Union No. 1547's ("IBEW 1547") Motion for Summary Judgment. Defendant Alaska Communications Systems Holdings, Inc. ("Alaska Communications") responded in opposition at Docket 16. IBEW 1547 replied at Docket 19. Also before the Court, at Docket 14, is Alaska Communications' Motion for Summary Judgment. IBEW 1547 responded in opposition at Docket 17, and filed an amended opposition at Docket 18-1. Alaska Communications replied at Docket 20. Oral argument was not requested and was not necessary to the Court's determination.

# BACKGROUND

IBEW 1547 and Alaska Communications are parties to a Collective Bargaining Agreement ("CBA").[1] Alaska Communications is a telecommunications service provider and IBEW 1547 is the Alaskan affiliate of the International Brotherhood of Electrical Workers.[2] IBEW 1547 is the "certified bargaining agent for all [Alaska Communications'] employees within the job classifications included in the designated bargaining unit" and the CBA "sets forth wages, hours, and other terms and conditions of employment of all of [Alaska Communications'] employees in the Bargaining Unit."[3]

## A. Provisions of the Collective Bargaining Agreement

The following provisions of the CBA are relevant to the parties' dispute:

**Article I – Purpose, Scope, Duration, and General Provisions**

**Section 1.3 Scope of Agreement:**

This Agreement is applicable, within the State of Alaska, to all work within the scope of those job descriptions listed in the wage schedule in Appendix 1 and will be applicable to other positions or job classifications as agreed between the Union and Company.[4]

---

[1] Docket 1-1 at 7, § 1.1.  The term of the CBA is from January 1, 2018 through December 31, 2023.  Docket 1-1 at 8, § 1.2.

[2] Docket 1-1 at 7, § 1.1.

[3] Docket 1-1 at 7, § 1.1.

[4] Docket 1-1 at 8, § 1.3.

Case No. 3:19-cv-00160-SLG, *Int'l Brotherhood of Elec. Workers v. Alaska Comm. Sys. Holdings, Inc.*
Order re Motions for Summary Judgment
Page 2 of 26

**Section 1.9 Recognition:**

The Company recognizes the Union as the exclusive bargaining agent for the purpose of collective bargaining with respect to wages, hours and other terms and conditions of employment for all employees in the bargaining unit consisting of the job classifications in this Agreement.

. . .

(B) If the Company purchases or acquired the assets of an entity not signatory to the IBEW, or the Company creates an Alaskan subsidiary, or obtains controlling interest in an Alaska-based joint venture or other business, the Company agrees to extend voluntary recognition to the IBEW upon an appropriate showing of IBEW's majority support among any group of employees employed by such entities eligible for representation. Thereafter, such employees shall be integrated by the Parties into appropriate classifications covered by this Agreement. Voluntary recognition also will be granted if IBEW demonstrates majority support among any employees of the Company eligible for representation who are not currently in the Bargaining Unit.[5]

## Article IV – Grievance and Arbitration Process

**Section 4.1 Purpose:**

The purpose of this procedure is to provide a means whereby complaints and grievances may be adjusted or resolved promptly and fairly.[6]

**Section 4.3 Definitions and Presentation of Grievances:**

"Grievances" shall mean, and be limited to, disputes or differences arising under the term of this Agreement between the Company and the Union, or employees so represented, with respect to the

---

[5] Docket 1-1 at 9–10, § 1.9.

[6] Docket 1-1 at 19, § 4.1.

Case No. 3:19-cv-00160-SLG, *Int'l Brotherhood of Elec. Workers v. Alaska Comm. Sys. Holdings, Inc.*
Order re Motions for Summary Judgment
Page 3 of 26

interpretation or application of any specific provision of this Agreement. . . .

The grievance shall be processed in accordance with the following steps:

## Step 1

Within five working days after the grievance is presented at Step 1, a meeting shall be held with the grievant, the department head of the activity, or designated representative, and the appropriate Shop Steward, or designated representative. The department head shall make a reply in writing not later than five working days after the meeting. If this reply is unsatisfactory, the grievance may be appealed to Step 2 provided such appeal is made within five working days following the receipt of the reply.

## Step 2

Within ten working days after the grievance is appealed to Step 2, a meeting shall be held between the appropriate Vice President of the Company, or designated representative and the Chief Shop Steward or designated representative. Written documentation explaining reason for disagreement along with any supporting information must be included with the grievance appeal. The Vice President shall make a reply in writing not later than five working days after meeting with the Union's representative. If this reply is unsatisfactory, the Union will provide written notice to the Vice President of Human Resources within ten working days following receipt of the Step 2 reply. The Union will have up to 20 working days to complete its internal review process. If after its review process is completed the Union wishes to advance the grievance further, the Union shall submit a written request to the Vice President of Human Resources for a meeting of the Grievance Review Committee (GRC). The GRC will be convened within ten working days of receipt of the written request from the Union. If the grievance is not resolved by the GRC, the grievance may be appealed to arbitration provided written notice of such appeal is given to the Vice President of Human Resources within ten working days following meeting of the GRC.[7]

_____

[7] Docket 1-1 at 19–20, § 4.3.

Case No. 3:19-cv-00160-SLG, *Int'l Brotherhood of Elec. Workers v. Alaska Comm. Sys. Holdings, Inc.*
Order re Motions for Summary Judgment
Page 4 of 26

**Section 4.4 Arbitration**

. . .

The Parties agree that the decision or award of the arbitrator shall be final and binding on each of the Parties and that they will abide thereby, subject to such laws, rules and regulations as may be applicable. The authority of the arbitrator shall be limited to determining questions directly involving the interpretation or application of specific provisions of this Agreement, and no other matter shall be subject to arbitration hereunder. The arbitrator shall have no authority to add to, subtract from, or to change any of the terms of this Agreement, to change an existing wage rate, or to establish a new wage rate. In no event shall the same question be the subject of arbitration more than once.[8]

## B.     The Parties' Dispute

The parties' dispute centers around a group of Alaska Communications' employees, the majority of whom work and reside in Oregon. IBEW 1547 seeks their inclusion under the terms of the CBA but Alaska Communications maintains that the CBA does not apply outside of the State of Alaska, and thus, does not apply to the employees in question. The events between the parties unfolded as follows:

On or about August 3, 2018, IBEW 1547 requested that Alaska Communications participate in a card check and voluntary recognition process for a group of employees in Oregon.[9] On August 22, 2018, Alaska Communications

---

[8] Docket 1-1 at 21, § 4.4.

[9] Docket 7 at 8–9, ¶ 9 (Answer) and Docket 9 at 3, ¶ 9 (Complaint).

Case No. 3:19-cv-00160-SLG, *Int'l Brotherhood of Elec. Workers v. Alaska Comm. Sys. Holdings, Inc.*
Order re Motions for Summary Judgment
Page 5 of 26

denied the request.[10]   Shortly thereafter, IBEW 1547 filed a petition for a self-determination election with the National Labor Relations Board ("NLRB") on behalf of the group of employees.[11]  The parties had a hearing before the NLRB beginning on September 18, 2018.[12]  On December 18, 2018, a regional director of the NLRB issued a ruling finding that the defined group of employees[13] "constitute[s] an appropriate voting group for the purpose of collective bargaining as part of the existing Alaska Unit" and that a "self-determination election will be ordered for these employees."[14]  The group in question was made up of the twelve employees in Oregon, as well as two employees in Alaska added by the regional director.[15]

---

[10] Docket 7 at 9, ¶ 11 (Answer) and Docket 9 at 3, ¶ 11 (Answer to Counterclaim).

[11] Docket 7 at 9, ¶ 12 (Answer) and Docket 9 at 3–4, ¶¶ 12–13 (Answer to Counterclaim).

[12] Docket 7 at 9, ¶¶ 12–14 (Answer) and Docket 9 at 3–4, ¶¶ 12–14 (Answer to Counterclaim).

[13] The group of employees was defined as "[a]ll full-time and regular part-time Network Operations Specialists, Senior Network Operations Specialists, Senior Team Leads, and Senior Administrative Assistants employed by Alaska Communications Systems Holdings, Inc. in Cable Systems Group at its facilities throughout the State of Oregon and the Diamond D facility in Alaska; but excluding all Cable Network Operations Supervisors and guards and supervisors as defined in the Act."  Docket 7 at 9–10, ¶ 15 (Answer) and Docket 9 at 4, ¶ 15 (Answer to Counterclaim).

[14] Docket 1 at 5, ¶ 18 (Complaint) and Docket 7 at 4, ¶ 18 (Answer); Docket 11-4 at 2.

[15] Docket 7 at 10, ¶ 16  (Answer) and Docket 9 at 4, ¶ 16  (Answer to Counterclaim). *See also* Docket 11-4 at 2 ("I find that the Voting Group sought by the Petitioner is appropriate as an eligible voter group for the inclusion in the Alaska Unit, with a modification to include two additional employees, a Senior Network Operations Specialist and Senior Team Lead, whose primary duty station is in Anchorage, Alaska.").

Case No. 3:19-cv-00160-SLG, *Int'l Brotherhood of Elec. Workers v. Alaska Comm. Sys. Holdings, Inc.*
Order re Motions for Summary Judgment
Page 6 of 26

Alaska Communications filed a request for review of the decision, but the NLRB denied the request finding "no substantial issues warranting review."[16] While the request for review was pending, as well as after it was denied, IBEW 1547 requested that Alaska Communications negotiate terms for the newly integrated employees.[17] Each time, Alaska Communications refused to negotiate or declined to answer.[18] On January 30, 2019, the NLRB conducted a ballot count and the voting group elected to be represented by the Union and be integrated into the existing bargaining unit.[19]

In the interim, IBEW 1547 hired a neutral third party to conduct a card count for the voting group, which took place on January 11, 2019.[20] The card count confirmed that there was majority support for representation among the employees.[21] On January 28, 2019, with that confirmation in hand, IBEW 1547

---

[16] Docket 11-10 at 1 and Docket 11-12 at 1.

[17] Docket 11-13.

[18] Docket 11-13 at 1–2; Docket 12 at 6.

[19] Docket 11-9 at 1.

[20] Docket 1-3 at 3.

[21] Docket 1-3 at 3.

Case No. 3:19-cv-00160-SLG, *Int'l Brotherhood of Elec. Workers v. Alaska Comm. Sys. Holdings, Inc.*
Order re Motions for Summary Judgment
Page 7 of 26

requested voluntary recognition for the group of employees under Section 1.9(B) of the CBA.[22]  Alaska Communications denied voluntary recognition.[23]

On February 7, 2019, IBEW 1547 filed a grievance pursuant to Article IV of the CBA.[24]  The parties engaged in the stepwise process laid out therein:  they held Step I and a Step II grievance meetings, Alaska Communications provided responses,[25] and the parties held a Grievance Review Committee meeting.[26]  The process culminated on April 10, 2019, when IBEW 1547 notified Alaska Communications that it was submitting the grievance to arbitration.[27]  On April 17, 2019, Alaska Communications responded:  "[a]s the work in question is not within the State of Alaska it does not fall under the scope of the collective bargaining agreement . . . and is therefore not subject to the grievance and arbitration process of the CBA."[28]  On May 17, 2019, after IBEW 1547 had requested and received a list of arbitrators from the American Arbitration Association ("AAA"),[29] Alaska

---

[22] Docket 1 at 6, ¶ 19 (Complaint) and Docket 7 at 4, ¶ 19 (Answer);  Docket 11-6 at 1 ("IBEW Local 1547 is seeking voluntary recognition under Section 1.9 B of the CBA for the employees the NLRB recently recognized as an appropriate voting group.").

[23] Docket 1 at 6, ¶ 20 (Complaint) and Docket 7 at 4, ¶ 20 (Answer).

[24] Docket 1-4 at 1.

[25] Docket 11-16; Docket 11-17; Docket 11-18.

[26] Docket 11-19.

[27] Docket 1 at 6, ¶¶ 21–22 (Complaint); *see also* Docket 1-5 at 1.

[28] Docket 1-6 at 1.

[29] Docket 11-21 at 1; Docket 11-23 at 1.

Case No. 3:19-cv-00160-SLG, *Int'l Brotherhood of Elec. Workers v. Alaska Comm. Sys. Holdings, Inc.*
Order re Motions for Summary Judgment
Page 8 of 26

Communications reiterated to IBEW 1547 that it "will not arbitrate this issue [as it] . . . is both substantively and procedurally inarbitrable."[30]  On May 20, 2019, IBEW 1547 notified Alaska Communications that, absent agreement to arbitrate by the end of that week, it would file suit to compel arbitration.[31]

On June 5, 2019, IBEW 1547 commenced this action seeking an order "to select an arbitrator without delay and arbitrate [the grievance] . . . as provided in Article IV of the collective bargaining agreement."[32]  On July 3, 2019, Alaska Communications answered and brought a counterclaim for declaratory judgment that "an arbitrator does not have the authority to extend the terms of the [CBA] outside the state of Alaska, and that Plaintiff may not compel Defendant to arbitrate any claims by Plaintiff to represent any employees outside the state of Alaska."[33] Alaska Communications also seeks an injunction barring IBEW 1547 from seeking to arbitrate this dispute.[34]  On July 30, 2019, IBEW 1547 filed the instant motion for summary judgment.  On August 19, 2019,  Alaska Communications filed its cross-motion for summary judgment on its counterclaim.

---

[30] Docket 1-7 at 1.

[31] Docket 1 at 6, ¶ 25 (Complaint) and Docket 7 at 4, ¶ 25 (Answer); *see also* Docket 1-8 at 1.

[32] Docket 1 at 7, ¶ 32.

[33] Docket 7 at 13, ¶ 36.

[34] Docket 7 at 13, ¶ 38.

Case No. 3:19-cv-00160-SLG, *Int'l Brotherhood of Elec. Workers v. Alaska Comm. Sys. Holdings, Inc.*
Order re Motions for Summary Judgment
Page 9 of 26

# LEGAL STANDARD

## I.   Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) directs a court to grant summary judgment if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the non-moving party and a dispute is "material" if it could affect the outcome of the suit under the governing law.[35]  When considering a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."[36]

## II.   Arbitrability

The question of whether the parties have "submitted a particular dispute to arbitration . . . is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise."[37]  The "function of the court is . . . confined to ascertaining whether the party seeking arbitration is making a claim which on its

---

[35] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[36] *Moldex-Metric, Inc. v. McKeon Prods., Inc.*, 891 F.3d 878, 881 (9th Cir. 2018) (alteration in original) (quoting *Anderson*, 477 U.S. at 255).

[37] *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (alteration in original) (*quoting AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)).

Case No. 3:19-cv-00160-SLG, *Int'l Brotherhood of Elec. Workers v. Alaska Comm. Sys. Holdings, Inc.*
Order re Motions for Summary Judgment
Page 10 of 26

face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator."[38]

Thus, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims."[39] In so deciding, a court should determine whether there is an arbitration provision in the agreement, and whether the disputed issue is arbitrable.[40] The Ninth Circuit has "stressed that [the court] look only to the contract's arbitration clause, rather than to the substantive provisions of the agreement, to determine whether a dispute is arbitrable."[41]

"In disputes involving a collective bargaining agreement with arbitration provisions, the arbitrability inquiry begins with a presumption of arbitrability"[42] and "[a]rbitration is to be ordered 'unless it may be said with positive assurance that the *arbitration* clause is not susceptible of an interpretation that covers the asserted dispute.'"[43] The presumption in favor of arbitrability is "particularly applicable

---

[38] *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 567–68 (1960).

[39] *AT&T Techs*, 475 U.S. at 649.

[40] *See American Mfg. Co.*, 363 U.S. at 567–68.

[41] *Dennis L. Christensen Gen. Bldg. Contractor, Inc. v. Gen. Bldg. Contractor, Inc.*, 952 F.2d 1073, 1077 (9th Cir. 1991).

[42] *Local Joint Exec. Brd. v. Mirage Casino-Hotel, Inc.*, 911 F.3d 588, 596 (9th Cir. 2018).

[43] *Haig Berberian, Inc., v. Cannery Warehousemen*, 535 F.2d 496, 499 (9th Cir. 1976) (emphasis in original) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)).

Case No. 3:19-cv-00160-SLG, *Int'l Brotherhood of Elec. Workers v. Alaska Comm. Sys. Holdings, Inc.*
Order re Motions for Summary Judgment
Page 11 of 26

where the clause is . . . broad,"[44] and "doubts should be resolved in favor of coverage."[45]

Then, "once it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."[46]

## DISCUSSION

The question before the Court is whether the parties' dispute over self-recognition of a group of employees working and residing in Oregon is arbitrable. The Court must determine first whether the parties have an agreement to arbitrate, and next, whether the particular dispute is arbitrable.[47]

The parties undisputedly have an agreement to arbitrate:  Article IV of the CBA sets forth the stepwise process for resolving grievances that culminates in arbitration.[48]  Grievances are defined as "disputes or differences arising during the term of this Agreement between the Company and the Union, or employees so represented, with respect to the interpretation or application of any specific

---

[44] *AT&T Techs.*, 475 U.S. at 650 (referring to a clause providing for arbitration for "any difference arising with respect to the interpretation of the contract or the performance of any obligation hereunder.").

[45] *Warrior & Gulf Navigation Co.*, 363 U.S. at 583.

[46] *John Wiley & Sons v. Livingston*, 376 U.S. 543, 557 (1964).

[47] *See United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 567–68 (1960).

[48] Docket 1-1 at 19–22.

Case No. 3:19-cv-00160-SLG, *Int'l Brotherhood of Elec. Workers v. Alaska Comm. Sys. Holdings, Inc.*
Order re Motions for Summary Judgment
Page 12 of 26

provision of this Agreement."[49]  The arbitration clause provides, among other things, that the "Parties agree that the decision or award of the arbitrator shall be final and binding" and that "[t]he authority of the arbitrator shall be limited to determining questions directly involving the interpretation or application of specific provisions of [the] Agreement, and no other matter shall be subject to arbitration."[50]

Thus, the question remaining for the Court is whether the particular dispute between the parties is arbitrable.  The parties agree that the Court's role is limited to interpretation of the arbitration provision; they differ only in how it should be interpreted.[51]  However, both parties also presented arguments in the alternative with respect to the proper interpretation of the CBA's substantive provisions. Finally, the parties dispute the implication of the parallel proceedings initiated by IBEW 1547 for self-determination before the NLRB.  The Court addresses each issue in turn.

## I.    Arbitrability of the Grievance

IBEW 1547 contends that because the arbitration clause of the CBA is broad and does not expressly exclude any grievances from arbitration, that a dispute over the meaning of Section 1.9(B) is a grievance subject to arbitration.[52]  It

---

[49] Docket 1-1 at 19, § 4.3.

[50] Docket 1-1 at 21, § 4.4.

[51] Docket 16 at 5; Docket 19 at 2.

[52] Docket 12 at 17.

Case No. 3:19-cv-00160-SLG, *Int'l Brotherhood of Elec. Workers v. Alaska Comm. Sys. Holdings, Inc.*
Order re Motions for Summary Judgment
Page 13 of 26

maintains that in evaluating arbitrability, the Court may not consider Section 1.3 of the CBA governing scope, as doing so would require the Court to interpret the substance of the contract's provisions.[53] IBEW 1547 reasons that Section 1.3 is substantive and can only be understood in the context of the CBA as a whole, including undisputedly substantive provisions such as Section 1.9(B), which allows for expansion of the scope of the CBA.[54]

Alaska Communications disagrees, and contends that the Court cannot compel arbitration of a dispute that the parties did not agree to arbitrate.[55] It insists that IBEW 1547's grievance involves employees who do not live or work in Alaska and that Section 1.3 of the CBA "confirms that neither the Agreement itself nor the grievance procedure contained therein apply outside the state of Alaska."[56] Thus, Alaska Communications concludes, "[t]he Agreement is simply not applicable to these employees" and "the grievance and arbitration provisions cannot apply."[57] Moreover, Alaska Communications maintains that Section 1.3 "defines the applicability of the contract as a whole, including the arbitration clause,"[58] and that

---

[53] Docket 12 at 19.

[54] Docket 12 at 19.

[55] Docket 16 at 4.

[56] Docket 16 at 5–6.

[57] Docket 16 at 6.

[58] Docket 16 at 7.

Case No. 3:19-cv-00160-SLG, *Int'l Brotherhood of Elec. Workers v. Alaska Comm. Sys. Holdings, Inc.*
Order re Motions for Summary Judgment
Page 14 of 26

disregarding that section's import would require that "the arbitration provision's scope somehow *exceeds* the scope of the contract itself!"[59]  Indeed, Alaska Communications contends that compelling arbitration, as IBEW 1547 requests, would require the Court to "impose a substantive bargaining outcome on the parties" by applying "the entire existing CBA to the unrepresented group."[60]

Alaska Communications further maintains that IBEW 1547 is asking the Court to compel arbitration on the basis of conclusory "magic words"—i.e. that the dispute is arbitrable.[61]  Alaska Communications contends that if it were enough to render a dispute arbitrable to simply claim it is so, the result would be "absurd" because it would allow a party to force arbitration "over anything."[62]  It queries "whether a union may force an employer to submit a matter to arbitration purely through semantics by placing a label on an event to disguise a non-arbitrable claim as an arbitrable one."[63]  Alaska Communications cites two cases in support:  *Local Union No. 787, International Union of Electrical, Radio and Machine Workers AFL-CIO v. Collins Radio Co.*[64] and *Construction Industry Employers Association v.*

---

[59] Docket 20 at 9 (emphasis in original).

[60] Docket 16 at 13.

[61] Docket 15 at 14.

[62] Docket 15 at 14.

[63] Docket 15 at 12.

[64] 317 F.2d 214 (5th Cir. 1963).

Case No. 3:19-cv-00160-SLG, *Int'l Brotherhood of Elec. Workers v. Alaska Comm. Sys. Holdings, Inc.*
Order re Motions for Summary Judgment
Page 15 of 26

*Local Union No. 210, Laborers International Union of North America, AFL-CIO.*[65]
In *Collins Radio*, a union sought to arbitrate a dispute over discriminatory denial of seniority rights, a grievable issue.[66]  However, the Fifth Circuit found that the dispute was not arbitrable because it was actually a dispute about the company's refusal to rehire employees, which was not a grievable issue because it was expressly excluded from the grievance process.[67]  Similarly, in *Construction Industry*, a union sought to arbitrate a grievance about whether its members should have been assigned work, but the Second Circuit affirmed the district court's determination that the underlying dispute was jurisdictional and non-arbitrable, despite the union's characterization otherwise.[68]  IBEW 1547 seeks to distinguish these cases on the basis that in both, the controlling agreement expressly excluded the disputed issue from the grievance process.[69]

---

[65] 580 F.3d 89 (2d Cir. 2009).

[66] *Local Union No. 787, Int'l Union of Electrical, Radio and Mach. Workers AFL-CIO v. Collins Radio Co.*, 317 F.2d 214, 218–19 (5th Cir. 1963).

[67] *Collins Radio*, 317 F.2d at 220.

[68] *Constr. Indus. Emp'rs Ass'n v. Local Union No. 210*, *Laborers Int'l Union of N. Am.*, 580 F.3d 89, 93–94 (2d Cir. 2009).

[69] Docket 18-1 at 8–9.  IBEW 1547 relies on the language in the agreement in *Collins Radio* that excluded grievances arising out of pre-contract occurrence or controversies about whether individuals had been permanently replaced prior to its effective date. Docket 18-1 at 9 (quoting *Collins Radio*, 317 F.2d at 217 n.7).  Moreover, IBEW 1547 points to the language in the CBA in *Construction Industry* that provided that "[d]isputes of jurisdictional nature shall not be subject to this grievance and arbitration procedure." Docket 18-1 at 8 (alteration in original) (quoting *Constr. Indus.*, 580 F.3d at 92).

Case No. 3:19-cv-00160-SLG, *Int'l Brotherhood of Elec. Workers v. Alaska Comm. Sys. Holdings, Inc.*
Order re Motions for Summary Judgment
Page 16 of 26

Finally, Alaska Communications asks the court for declaratory judgment and a permanent injunction barring IBEW 1547 from seeking arbitration of this grievance.[70] IBEW 1547 disputes that declaratory judgment is appropriate, noting that it would require addressing the merits of the dispute.[71] It also disputes that Alaska Communications would suffer irreparable injury in the absence of injunctive relief.[72]

At its core, the parties' dispute centers on the interpretation of Section 1.9(B): IBEW 1547 interprets the provision as extending to the group of employees in Oregon, whereas Alaska Communications interprets it as limited to employees in Alaska. Thus, the dispute is about "the interpretation or application of [a] specific provision of [the] Agreement," namely Section 1.9(B), and is therefore a grievance as defined in the CBA.[73] Article IV of the CBA provides a procedure for resolving

---

[70] Docket 15 at 20. Alaska Communications maintains that there is an actual controversy because IBEW 1547 "seeks to force the Company to give up its rights under the [NLRA] to set the initial bargaining position for these newly organized employees through negotiations." Docket 15 at 17. Alaska Communications adds that the dispute is justiciable because the "Union has filed suit in this court to compel arbitration of the matter." Docket 15 at 18. Finally, it maintains that an injunction would be proper because the "Union seeks to cripple the Company's bargaining leverage by forcing them to assume the wage classifications of a contract" and there is "no adequate remedy to compensate the Company if arbitration of this matter ensues." Docket 15 at 19.

[71] Docket 18-1 at 15.

[72] Docket 18-1 at 15.

[73] Docket 1-1 at 19, § 4.3.

Case No. 3:19-cv-00160-SLG, *Int'l Brotherhood of Elec. Workers v. Alaska Comm. Sys. Holdings, Inc.*
Order re Motions for Summary Judgment
Page 17 of 26

grievances, which culminates in arbitration.[74]   Indeed, Alaska Communications

followed all the other steps of the grievance process, refusing only to participate in

arbitration.[75]   Because the parties' dispute over the scope and application of

Section 1.9(B) is a grievance as defined by the CBA, arbitration is appropriate.

In determining arbitrability, the Court is to "look only to the contract's

arbitration clause,"[76] and nothing in the arbitration clause excludes a dispute about

the scope or effect of Section 1.9(B).   Indeed, the Ninth Circuit has previously

characterized similar arbitration and grievances provisions as "very broad."[77]

Thus, the presumption of arbitrability is particularly strong and "[d]oubts should be

resolved in favor of coverage."[78]

Unlike the arbitration provisions in the agreements in *Collins Radio* and

*Construction Industry*, Article IV of the CBA does not carve out the disputed

---

[74] Docket 1-1 at 19–22.

[75] Docket 11-17; Docket 11-18; Docket 11-19; Docket 11-20.

[76] *Dennis L. Christensen Gen. Bldg. Contractor, Inc. v. Gen. Bldg. Contractor, Inc.*, 952 F.2d 1073, 1077 (9th Cir. 1991).

[77] *Id.* (commenting on arbitration provision that covered "all disputes concerning the interpretation or application of this Agreement and the Master Labor Agreement"); *cf.* Docket 1-1 at 19, § 4.3 (arbitration clause covers "disputes or differences arising during the term of this Agreement between the Company and the Union, or employees so represented, with respect to the interpretation or application of any specific provision of this Agreement.").

[78] *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960).

Case No. 3:19-cv-00160-SLG, *Int'l Brotherhood of Elec. Workers v. Alaska Comm. Sys. Holdings, Inc.*
Order re Motions for Summary Judgment
Page 18 of 26

issue.[79]     Although Alaska Communications contends that Section 1.3 unambiguously excludes from arbitration under Article IV any disputes involving out-of-state employees by limiting the agreement to the State of Alaska, the Court disagrees.  Section 1.3 does not carve out from arbitration disputes between the parties over the meaning of  the Agreement's provisions;  indeed, it does not mention arbitration or grievances at all.  To the extent that Section 1.3 bears on the meaning or application of Section 1.9(B), governing voluntary recognition, that remains a question for the arbitrator and not for this Court.

The Ninth Circuit decision's in *Dennis L. Christensen General Building Contractor, Inc. v. General Building Contractor, Inc.* is informative.[80]   There, the parties—Dennis L. Christensen Building Contractor ("Christensen") and the Southern California Conference of Carpenters ("SCCC")—had signed a short form agreement that adopted the terms of a master labor agreement negotiated by the

---

[79] *See Local Union No. 787, Int'l Union of Electrical, Radio and Mach. Workers AFL-CIO v. Collins Radio Co.*, 317 F.2d 214, 217 (5th Cir. 1963) ("[T]he 'Grievance Procedure' it defined the controversies as those 'between the employees and the Company' and expressly excluded those arising out of pre-contract occurrences and any controversy as to whether an individual had been permanently replaced prior to its effective date."); *Constr. Indus. Emp'rs Ass'n v. Local Union No. 210, Laborers Int'l Union of N. Am.*, 580 F.3d 89, 92 (2d Cir. 2009) ("Article XII, Section 7 of the CBA . . . provided that '[d]isputes of a jurisdictional nature shall not be subject to this grievance and arbitration procedure.'") (emphasis in original).

[80] 952 F.2d at 1078.  *See also Haig Berberian, Inc., v. Cannery Warehousemen*, 535 F.2d 496, 499 (9th Cir. 1976) (holding that dispute about whether employees in new facility were brought into CBA by recognition and work-covered provisions was a dispute "arising out of the application or interpretation" of the CBA such that arbitration was proper).

Case No. 3:19-cv-00160-SLG, *Int'l Brotherhood of Elec. Workers v. Alaska Comm. Sys. Holdings, Inc.*
Order re Motions for Summary Judgment
Page 19 of 26

SCCC and a multi-employer bargaining association.[81] The agreement required Christensen to employ union carpenters for its contracts.[82] Neither the short form nor the master agreement was applicable in San Diego county, but the short form agreement provided that "modifications of the master labor agreement would bind both signatories."[83] A few years after Christensen signed the short form agreement, the master agreement was amended to cover San Diego county.[84] Christensen refused to abide by the requirements of the agreement in its San Diego contracts, and the SCCC filed a grievance and sought arbitration.[85] The arbitration clause in the master agreement covered "all disputes concerning the interpretation or application of this Agreement and the Master Labor Agreement."[86] Christensen maintained that the arbitration clause in the agreement "could only be valid for disputes within the geographic jurisdiction contemplated by the parties" and that a dispute about extending contracts to San Diego was therefore not arbitrable.[87] Noting that the arbitration clause was "very broad," the Ninth Circuit

---

[81] *Christensen*, 952 F.3d at 1074.

[82] *Id.*

[83] *Id.* at 1075.

[84] *Id.*

[85] *Id.*

[86] *Id.* at 1077.

[87] *Id.* at 1076.

Case No. 3:19-cv-00160-SLG, *Int'l Brotherhood of Elec. Workers v. Alaska Comm. Sys. Holdings, Inc.*
Order re Motions for Summary Judgment
Page 20 of 26

explained that "[i]n such cases, only an express exclusion of a particular grievance or 'the most forceful evidence of a purpose to exclude the claim' from arbitration will avoid referral of a dispute to arbitration."[88] The Circuit concluded that because "[n]o provision of the short form removes disputes over the proper interpretation of the modification provision from arbitration's reach[,] . . . arbitration of the dispute would appear to be mandated."[89] The Circuit acknowledged that "Christensen may well be correct that the parties never intended the short form agreement to have any application in San Diego, and that they intended the modification clause to permit only changes necessary to preserve work opportunities for employees and individuals covered," but concluded that "under a broad interpretation clause, these are matters for the arbitrator to decide."[90]

The Court finds the reasoning in *Christensen* persuasive.[91] IBEW 1547 and Alaska Communications agreed to arbitrate any grievance which, just as in

---

[88] *Id.* at 1077 (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 650 (1986)).

[89] *Id.*

[90] *Id.* at 1078.

[91] Alaska Communications seeks to distinguish *Christensen*, emphasizing that the agreement had a modifications clause that was used to amend the Master Agreement, whereas the parties in this case have "not entered any agreement allowing the CBA to expand." Docket 16 at 10. IBEW 1547 maintains that the Section 1.9(B) provision of the CBA is analogous to the modifications provision in *Christensen*. Docket 17 at 10. The Court finds that Section 1.9(B) is analogous to the modifications provision at issue in *Christensen* only in that it is the substantive provision of the CBA that was invoked by one party to expand the reach of the parties' agreement. In *Christensen*, the SCCC invoked the modification provision to expand the scope of the contract to San Diego, 952 F.2d at 1077, just as here, IBEW 1547 maintains Section 1.9(B) expands the

Case No. 3:19-cv-00160-SLG, *Int'l Brotherhood of Elec. Workers v. Alaska Comm. Sys. Holdings, Inc.*
Order re Motions for Summary Judgment
Page 21 of 26

*Christensen*, includes "disputes or differences . . . with respect to the interpretation or application of any specific provision."[92]  Absent an express provision carving out "disputes over the proper interpretation of the [voluntary recognition] provision from arbitration's reach," the Court finds that arbitration is mandated.[93]  Although Alaska Communications maintains that the dispute is outside the geographical scope of the agreement, in the Court's view it is more aptly described as a dispute about the meaning and application of Section 1.9(B), which lands it squarely within the arbitration clause of the CBA.  Here, as in *Christensen*, "[t]he controversy between [the parties] . . . is best characterized by its nature, rather than by reference to geography"[94] and the arbitration clause is "susceptible of an interpretation that covers the asserted dispute."[95]

---

coverage of the agreement to employees in Oregon.  Docket 17 at 10.  In *Christensen*, the Ninth Circuit held that to resolve the parties' dispute, "one must interpret the scope of the . . . modifications provision" and thus the dispute was arbitrable.  952 F.2d at 1078.  Here, the Court finds that to resolve the parties' dispute, "one must interpret the scope of [Section 1.9(B)]" and thus that the dispute is arbitrable.  *Id.*  Beyond noting that Section 1.9(B) was invoked by IBEW 1547 as a modifying provision, the Court declines to consider any further analogies between Section 1.9(B) and the modification provision in the agreement in *Christensen*.

[92] Docket 1-1 at 19, § 4.3.

[93] *Christensen*, 952 F.2d at 1077.

[94] *Id.* at 1078.  For this additional reason, the Court finds *Collins Radio* and *Construction Industry* inapposite.  IBEW 1547 has not "plac[ed] a label on an event to disguise a non-arbitrable claim as an arbitrable one."  Docket 15 at 12.

[95] *Haig Berberian, Inc., v. Cannery Warehousemen*, 535 F.2d 496, 499 (9th Cir. 1976), (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co*., 363 U.S. 574, 582–83 (1976)).

Case No. 3:19-cv-00160-SLG, *Int'l Brotherhood of Elec. Workers v. Alaska Comm. Sys. Holdings, Inc.*
Order re Motions for Summary Judgment
Page 22 of 26

The Court also is not persuaded by Alaska Communications' assertion that by compelling arbitration, the Court is imposing a substantive bargaining outcome on the parties; whether or not Section 1.9(B) applies to the group of employees including those in Oregon remains a question for the arbitrator.[96]

For the foregoing reasons, the Court concludes that IBEW 1547 is entitled to summary judgment and the Court will order arbitration.

## II.    Section 1.9(B)

The parties also present arguments on the proper interpretation of Section 1.9(B). Specifically, IBEW 1547 contends that it is significant that "Section 1.9(B) contains Alaska-based restrictions in the case of subsidiaries and joint ventures," but does not when it refers to voluntary recognition where there is "majority support among any employees of the Company."[97]  In contrast, Alaska Communications contends that "Section 1.9(B) contains no language whatsoever that contradicts or supersedes Section 1.3" and that it actually reinforces the limited scope of the CBA because it "repeatedly refer[s] to 'Alaskan' business entities."[98]

Because the Court's role is confined to determining whether the dispute is arbitrable, it expresses no opinion on the meaning of Section 1.9(B).  The proper

---

[96] Docket 16 at 13.

[97] Docket 19 at 9.

[98] Docket 16 at 8.

Case No. 3:19-cv-00160-SLG, *Int'l Brotherhood of Elec. Workers v. Alaska Comm. Sys. Holdings, Inc.*
Order re Motions for Summary Judgment
Page 23 of 26

interpretation of the provision is a question of contract interpretation for the arbitrator.

### III. Self-Determination Under the NLRA

Lastly, the parties dispute the implications of the proceedings initiated by IBEW 1547 under the National Labor Representation Act ("NLRA").

Alaska Communications contends that the NLRA is the "correct forum for resolution of this dispute."[99]  According to Alaska Communications, IBEW 1547's delay in bringing the grievance is evidence that Section 1.9(B) does not apply to the group of employees.  It maintains that it is significant that "[t]he Union now wants to arbitrate the 'voluntary recognition' clause of the existing contract after it previously determined it did not apply and instead participated in a self-determination election through the [NLRB]."[100]  It urges the Court to review the dispute in context, and to consider that IBEW 1547 waited until "after the self-determination election to file its grievance."[101]  Alaska Communications maintains that if IBEW 1547 actually believed that the CBA applied to the group of employees in question, including those in Oregon, it "could have sought arbitration of that issue before the self-determination election."[102]

---

[99] Docket 16 at 12.

[100] Docket 15 at 17.

[101] Docket 15 at 11.

[102] Docket 15 at 11.

Case No. 3:19-cv-00160-SLG, *Int'l Brotherhood of Elec. Workers v. Alaska Comm. Sys. Holdings, Inc.*
Order re Motions for Summary Judgment
Page 24 of 26

IBEW 1547 responds that it pursued both routes—resolution under the NLRA and a grievance under the CBA—because relief under the NLRA will not be immediate.[103] It maintains that Section 1.9(B) provides that new employees "shall be integrated" immediately under the CBA,[104] whereas the NLRA only requires parties to negotiate new terms for those employees for the CBA that would go into effect after the current one expires.[105] IBEW 1547 posits that timeliness is a question for the arbitrator,[106] and adds that it waited to bring a grievance until Alaska Communications had refused "to grant voluntary recognition . . . after a showing of majority support."[107]

The Court declines to address the implications of the parallel proceedings and leaves the issue for the arbitrator.

## CONCLUSION

In light of the foregoing, IT IS ORDERED as follows: IBEW 1547's Motion for Summary Judgment at Docket 11 is GRANTED and Alaska Communications' Motion for Summary Judgment at Docket 14 is DENIED.

Alaska Communications must select an arbitrator for grievance ACS 19-02

---

[103] Docket 12 at 24–25.

[104] Docket 1-1 at 10, § 1.9.

[105] Docket 12 at 25.

[106] Docket 18-1 at 10–11, 14. In its reply brief, Alaska Communications clarifies that it is not advancing a timeliness argument. *See* Docket 20 at 5 n.2.

[107] Docket 181 at 12.

Case No. 3:19-cv-00160-SLG, *Int'l Brotherhood of Elec. Workers v. Alaska Comm. Sys. Holdings, Inc.*
Order re Motions for Summary Judgment
Page 25 of 26

pursuant to the terms set out in Article IV of the CBA within **7 days** of the date of this order.

The Clerk of Court shall enter a final judgment accordingly.

DATED this 11th day of December, 2019 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:19-cv-00160-SLG, *Int'l Brotherhood of Elec. Workers v. Alaska Comm. Sys. Holdings, Inc.*
Order re Motions for Summary Judgment
Page 26 of 26